**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kimberly Mary Pickett,<br><br>　　　　Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>　　　　Defendant. | No. CV-22-01461-PHX-MTL<br><br>**ORDER** |

At issue is the denial of Plaintiff Kimberly Pickett's Application for Social Security benefits. Plaintiff filed a Complaint (Doc. 1) seeking judicial review of that denial. The Court now addresses Pickett's Opening Brief (Doc. 15, "Pl. Br."), Defendant's Response Brief (Doc. 19, "Def. Br."), and Pickett's Reply (Doc. 16). The Court has reviewed the briefs and Administrative Record (Doc. 9, "R."), and now affirms the Administrative Law Judge's ("ALJ") decision. (R. at 8-13.)

**I.    BACKGROUND**

Pickett applied for Social Security Disability Insurance ("SSDI") benefits on June 17, 2014, based on disability beginning May 21, 2013. (R. at 102-04.) The Commissioner denied her application initially and upon reconsideration. (R. at 38-58.) Then, on March 21, 2018, the ALJ issued an unfavorable decision. (*Id.*) This became the agency's final decision after the Administration Appeals Council denied a request for review. (R. at 8-13.) Pickett then filed an appeal to this Court. (R. at 1905-13.) While her appeal was pending, she filed a subsequent SSDI claim on July 1, 2019, alleging disability beginning on March

21, 2018. (R. at 1916.) On October 8, 2020, this Court reversed the ALJ's March 21, 2018 decision and remanded the case for further proceedings. (R. at 1956-65.) On remand, the ALJ consolidated Pickett's applications and issued an unfavorable decision. (R. at 1807-35.) That decision became the final agency decision when the Appeals Council denied a request for review of that decision. (R. at 1775-80.) The present appeal followed.

## II.    LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the Court must consider the entire record and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled, and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled, and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R.

Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled, and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where the ALJ determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If not, the claimant is disabled. *Id.*

## III.   ANALYSIS

### A.   Dr. Khalsa's Medical Opinion

Pickett first argues that the ALJ erred by rejecting Dr. Khalsa's medical opinions without providing specific and legitimate reasons that are supported by substantial evidence in record. (Pl. Br. at 16-21.) The Commissioner disagrees. (Def. Br. at 17-21.) The ALJ, rather than a physician, is responsible for determining a claimant's RFC in accordance with the medical evidentiary rules.[1] 20 C.F.R. § 404.1546(c). Under the pre-March 27, 2017 rules, "[t]he ALJ must consider all medical opinion evidence" when assessing a claimant's RFC, *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008), but there exists a hierarchy among medical opinions. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). The weight assigned to medical opinions is determined based on the examining relationship, treatment relationship, the length and nature of treatment, supportability, consistency, and specialization, among other factors. 20 C.F.R. § 404.1527(c). Those who have treated a claimant are treating physicians, those who examined but did not treat are examining physicians, and those who neither examined nor treated are nonexamining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). A "special weight" is generally accorded to opinions of the claimant's treating physician. *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 823 (2003); *see also Orn*, 495 F.3d

---

[1] In 2017, the Social Security Administration amended the rules for evaluating medical opinion evidence. *See* Revisions to Rules Regarding Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5844 (Jan. 18, 2017). The new regulations apply to claims filed on or after March 27, 2017. *Id.* Because the ALJ consolidated Plaintiff's claims (Doc. 9-12 at 37) and Plaintiff's first claim was filed prior to March 27, 2017, the Court evaluates the ALJ decision under the prior rules (R. at 1810). *See* HALLEX I-5-3-30(D), 2017 WL 1362776.

at 631.

If a treating physician's opinion is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" or is "inconsistent with the other substantial evidence in the case record," however, the ALJ need not give it controlling weight. 20 C.F.R. § 404.1527(c)(2); *see also Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). If a treating physician's opinion is not given controlling weight, the ALJ must consider the factors listed in Section 404.1527(c) in assigning its relative weight. When rejecting a treating physician's testimony, "[t]he ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctor['s], are correct." *Orn*, 495 F.3d at 632 (citing *Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988)); *see also Garrison*, 759 F.3d at 1012–13. Finally, the "opinion of [an] examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in [the] record. *Lester*, 81 F.3d at 830 n. 13.

Here, after an assessment of Pickett and a subsequent follow-up evaluation, Dr. Khalsa indicated that she can only sit for less than two hours in an 8-hour work day and that it is necessary for her to alternate between sitting, standing, or walking every one to twenty minutes. (R. at 2602.) Further, Dr. Khalsa opined that Pickett needs more than fifteen minutes of rest following each position change. (*Id.*) He also opined that she would have less than occasional use of her left hand and occasional use of her right hand. (*Id.*) Additionally, he stated that Pickett's impairments contribute to headaches or mental fatigue more than four times a month. (*Id.* at 2601.) Dr. Khalsa further opined that Pickett's condition was moderately severe and would cause her to miss six or more work days a month. (*Id.*) Finally, he opined that the condition is "permanent" and will "worsen." (*Id.*) The ALJ gave Dr. Khalsa's opinions "no weight," stating:

> The opinions appear to be based on the claimant's subjective complaints, and he checked boxes on a form only providing minimal explanation. The opinions are also vague and imprecise, particularly his reference to a "permanent neuro

- 4 -

>injury". The limitations are extreme and inconsistent with the record. There is no evidence to support limitations on the use of the right hand during the relevant time period as evidenced by Dr. Khalsa's own treatment notes. Lastly, the undersigned recognizes that statements on some issues, such as a claimant is "disabled," "unable to work," or "unable to perform a past job," are not medical opinions but are administrative findings that are dispositive of a case. These opinions require familiarity with the Social Security disability regulations and legal standards, and are issues reserved for the Commissioner of Social Security.

(R. at 1821 (citations omitted).)

Pickett first argues that the ALJ erred in rejecting Dr. Khalsa's opinions because they were based on her subjective complaints. (Pl. Br. at 18.) Pickett argues there was no reason for Dr. Khalsa or the ALJ not to believe her, and Dr. Khalsa used professional judgment when giving his medical opinion. (*Id.*)

The ALJ's rejection based on Plaintiff's subjective complaints is erroneous. First, Dr. Khalsa conducted a physical examination of Pickett and considered her extensive medical history, including multiple neck surgeries. (R. at 2475.) The record is clear that Dr. Khalsa relied on Plaintiff's "level of nerve damage," "global weakness and sensory loss" in her left upper extremity during a physical exam, and the existence of ectopic bone in making his determination as to her capabilities. (*Id.*) All of this documented evidence is consistent with Dr. Khalsa's opinion that Plaintiff requires frequent position changes and has limited function in her left arm. (R. at 2371, 2458.) There was also no evidence in the record that suggests that Dr. Khalsa gave Pickett's subjective complaints any unwarranted consideration. Because Dr. Khalsa relied upon objective medical evidence to form his opinion and not solely on Plaintiff's subjective complaints, the Court finds that the ALJ's reason to reject Dr. Khalsa's opinion based on Plaintiff's subjective complaints is not supported by substantial evidence.

Pickett next argues that checkbox forms should not be rejected due to a "lack of narrative explanation" because checkbox forms are not inherently unreliable. (*Id.* (citing

*Trevizo v. Berryhill*, 871 F.3d 664, 677 n.4 (9th Cir. 2017)). While medical opinions should not be rejected merely because they are on checkbox forms, "the ALJ may permissibly reject [checkbox forms] that do not contain any explanation of the bases of their conclusions." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (cleaned up) (quoting *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996)). Here, Dr. Khalsa fails to include any explanation or support for his conclusions on the opinion form. (R. at 2460, 2601-02.) He failed to tie his findings to his treatment notes or any objective medical evidence in the record that might support his conclusions about Plaintiff's abilities. (*Id.*) Because of this lack of explanation and support, the Court finds that the ALJ did not error in its rejection of Dr. Khalsa's opinions contained on unsupported checkbox forms.

Pickett next argues that the ALJ erred in rejecting Dr. Khalsa's medical opinions as inconsistent with the record. (Pl. Br. at 19-20.) The ALJ notes the inconsistency between Dr. Khalsa's treatment notes that Pickett is "neurologically intact to her right upper extremity" (R. at 2470, 2475, 2477) and his medical opinion indicating decreased function of her right arm. (R. at 2459, 2602.) Pickett argues that a prior right arm dysesthesia diagnosis aligns with Dr. Khalsa's opinion that she can only sustain "occasional use" of her right arm (Pl. Br. at 19) but she fails to explain how this is consistent with Dr. Khalsa's "neurologically intact" observation during treatment. Though the evidence may support an interpretation more favorable to Plaintiff, the ALJ's interpretation is rational, and the Court upholds the ALJ's decision where the evidence is subject to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 680–81 (9th Cir. 2005).

Pickett also argues that the ALJ failed to cite evidence that was inconsistent with Dr. Khalsa's other opinions related to Pickett's need to alternate positions, rest with position changes, require absences from work, or be off task at work due to her condition. (Pl. Br. at 19) While the ALJ did not recite all the record inconsistencies in her analysis awarding no weight to Dr. Khalsa (R. at 1821), she previously referenced evidence that was inconsistent with Dr. Khalsa's opinions in earlier in her decision. (R. at 1818.) A court may "read the paragraph discussing [contrary findings], and draw inferences relevant to

[the doctor's] findings and opinion, if those inferences are there to be drawn." *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989). Though the medical evidence supports some limitations, the ALJ properly concluded that the evidence does not support limitations beyond those included in Pickett's determined RFC. While Dr. Khalsa indicated that Pickett could sit for less than two hours and needs to change positions every one to twenty minutes (R. at 2459), the ALJ properly determined that these conclusions are entitled to no weight because Pickett sat for an examination lasting nearly six hours with only a lunch break, drove independently, traveled frequently from Arizona to California and New York for treatment, and took care of her infant, albeit with some help. (R. at 1819 (citing R. at 2300, 1814, 2526).) These are activities are inconsistent with Dr. Khalsa's extreme limitations, and the ALJ properly rejected Dr. Khalsa's opinion on that basis. *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (holding that a conflict between a claimant's daily activities and a treating physician's opinion about the claimant's ability to engage in gainful employment is a specific and legitimate reason to discount that opinion). Because the ALJ provided specific and legitimate reasons supported by substantial evidence that Dr. Khalsa's opinion is inconsistent with the record, the Court finds that she did not err on this basis.

Finally, Pickett argues that the ALJ erred in rejecting Dr. Khalsa's opinion that Pickett was "disabled" and "unable to work" because these determinations are administrative findings reserved for the ALJ. (Pl. Br. at 17 n.6.) The ALJ did so properly because while "[physicians] may render opinions on the ultimate issue of disability," *see Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998), it is the ALJs who "are responsible for making the determination or decision about whether [a claimant] meet[s] the statutory definition of disability," 20 C.F.R. § 404.1527(d)(1).

In sum, the ALJ erred because her rejection of Dr. Khalsa's opinion as based on Pickett's subjective complaints is not supported by substantial evidence. This error is harmless, however, because the ALJ provided specific and legitimate reasons to reject Dr. Khalsa's opinions that are supported by substantial evidence, including that the opinions

are within checked boxes on a form with minimal explanation, inconsistent with the record, and on issues reserved for the Commissioner. "[S]o long as there remains 'substantial evidence supporting the ALJ's conclusions on . . . credibility' and the error 'does not negate the validity of the ALJ's ultimate [credibility] conclusion,' such is deemed harmless and does not warrant reversal. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (citing *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004). Because the ALJ provided substantial evidence to support her rejection of Dr. Khalsa's opinion for specific and legitimate reasons, the errors discussed above did not negate the validity of her conclusion. Thus, the Court finds that the ALJ's erroneous determination that Dr. Khalsa's opinion was based on Plaintiff's subjective complaints was harmless.

**B.     Pickett's Symptom Testimony**

Pickett argues that the ALJ erred by rejecting her symptom testimony in the absence of specific, clear, and convincing reasons supported by substantial evidence in the record. (Pl. Br. at 21.) The Commissioner responds by arguing that substantial evidence supported the ALJ's decision. (Def. Br. at 9.) The Court agrees with the Commissioner for the following reasons.

The ALJ engages in a two-step analysis when evaluating a claimant's symptom testimony. *Garrison*, 759 F.3d at 1014. First, the ALJ must determine whether the claimant has produced objective medical evidence of an underlying impairment. *Id*. Second, unless there is evidence that the claimant is malingering, the ALJ must provide specific, clear, and convincing reasons for rejecting symptom testimony associated with the underlying impairment. *Burch*, 400 F.3d at 680. Here, at the first step, the ALJ found underlying severe impairments and cited no evidence of malingering. (R. 1813-19.) Accordingly, the ALJ needs to provide specific, clear, and convincing reasons to discount Plaintiff's symptom testimony. *Burch*, 400 F.3d at 680. In making credibility determinations, an ALJ may consider a variety of factors in evaluating symptom testimony including, "[the claimant's] reputation for truthfulness, inconsistencies either in [her] testimony or between [her]

1  testimony and [her] conduct, [her] daily activities, [her] work record, and testimony from
2  physicians and third parties concerning the nature, severity, and effect of the symptoms of
3  which [she] complains." *Light v. Soc. Sec. Admin., Comm'r*, 119 F.3d 789, 792 (9th Cir.
4  1997).

Here, the ALJ summarized the Plaintiff's testimony as follows:

> The claimant testified to a history of cervical decompression resulting in pain and radiculopathy of the left arm, and issues with the right hand. She also testified to difficulty with memory. The claimant testified that she spends the day managing her pain. She rated her pain a 6-10. She reported headaches and nerve pain due to her neck impairments. Lying down is the only thing that helps. The claimant testified that she cannot do anything sustainable. She has difficulty sleeping and naps during the day. She only sleeps two hours per night. The claimant testified that treatment modalities included a chiropractor, work with a therapist, and meditation. She described blurriness in the left eye and nerve pain due to her neck. This occurs of [sic] 4-5 times per week. She reported the inability to do simple tasks around her home. She could not work an eight-hour shift because pain is unpredictable. The claimant testified to pins and needles in the right hand since surgery. She does not use her left hand due to lack of strength and dexterity. The claimant testified that she has no feeling in the fingers of the left hand and they are useless. She wears a brace at night, and avoids lifting up because it aggravates the nerve. The claimant testified to 3-4 headaches per week. Prior to 2019, she spent her days healing from surgeries and managing pain. The claimant testified that she traveled to California and New York using ice packs. She drives short distances and walks 20-30 minutes for therapy. The claimant described her neck pain as stabbing, sharp, beating, and radiating down her shoulder into the right arm and elbow. Her grip strength has worsened. She drops whatever she is holding. The claimant testified that she lies down when she has a headache for at least one hour. She can sit approximately 15 minutes, but squirms. She can lift 10 pounds with the right hand, but it causes pain in the neck. She can lift her right hand up, but not the left.

(R. 1816-17.) The ALJ presented three reasons for discounting Pickett's testimony: (1) her

testimony is inconsistent with the medical records, (2) she had a positive response to treatment, and (3) her daily activities are inconsistent with her testimony. (R. at 1819.)

First, the ALJ properly relied on the objective medical evidence to discount Pickett's testimony that the intensity, persistence, and limiting effects of her symptoms are not entirely consistent with the evidence in the record. (*Id.*) In making these determinations, the ALJ pointed to multiple inconsistencies. For example, Pickett showed reduced strength in the left finger, hand grip, and wrist extension, but the record lacked evidence of intrinsic wasting in the left hand or upper extremity. (*Id.*) She also testified that her left hand is useless, but medical reports in the record show varying degrees of utility. (*Id.* (*see* R. at 2428, 2696.)) The Court finds that the ALJ's explanation detailing the inconsistencies between Pickett's testimony and the medical evidence provided specific, clear, and convincing reasons supported by substantial evidence to reject Pickett's symptom testimony.

Second, the ALJ properly discounted Pickett's testimony because of her positive response to treatment. (R. at 1818-19.) Pickett utilized several treatment modalities and had varying degrees of success. Pickett's headaches have been managed conservatively with Advil. (R. 2379, 2591-93.) Evidence of conservative treatment is a valid reason to discredit a claimant's symptom testimony unless the claimant provides a "good reason" for not seeking alternative treatment. *Carmickle*, 533 F.3d at 1162; *see Warre v. Comm'r of the Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for purposes of determining eligibility for SSI benefits."). Here, Plaintiff provides no such good reason. Moreover, in August 2021, she reported an improvement in her symptoms while using a hand brace. (R. at 2696.) She has also reported a positive response to left anterior scale muscle blocks, cervical epidural steroid injections, chiropractic care, and Botox. (R. 572, 1249-51, 1498-99, 1508, 1519-20, 2502.) The Court finds that the ALJ's citations to Pickett's improvements with treatment were specific, clear, and convincing reasons to reject Pickett's symptom testimony. *See Berry v. Astrue*, 622 F.3d 1228, 1236 (9th Cir. 2010)

(ALJ used medical records that specifically supported his conclusion that plaintiff's impairments had improved and were well-controlled by the prescribed treatment, resulting in minimal limitations).

Finally, contrary to Plaintiff's arguments, the ALJ properly discounted Pickett's testimony because there were inconsistencies with her daily activities. Regarding Plaintiff's daily activities, the ALJ found:

> The claimant also shows that ability to travel in airplanes or by automobile, which involves walking to the gate and extended sitting. She frequently traveled from Arizona to California and to New York for treatment. She also reported the ability to walk on a treadmill or outside, and drive independently. The claimant also had a baby after the alleged onset date and provides care for her infant, albeit with some help from her family. She is able to drive, and can walk for exercise. The activities described above are inconsistent with a finding of disability.

(R. 1819 (citations omitted).) The ALJ also noted that "[t]he claimant testified that she can only sit for short periods of time, but records from Dr. Hyman in March 2017 indicated that claimant sat through nearly six hours of an examination with a break for lunch only intermittently rubbing her left shoulder or leaning towards the left." (*Id.*) So although Pickett testified that she spends her days managing her level 6-10 pain while in bed and "cannot do anything sustainable," including work, the ALJ properly noted that such limitations are inconsistent with her daily activities. (*Id.*) These inconsistencies are specific, clear, and convincing reasons to reject Pickett's symptom testimony claiming total disability. *See Tommasetti*, 533 F.3d at 1039 (an ALJ may consider "many factors in weighing a claimant's subjective symptom testimony," including "the claimant's daily activities.") The ALJ "is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995). A district court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation." *Id.* The Court is accordingly not convinced by Plaintiff's argument that the record contains findings that

support Plaintiff's testimony. Accordingly, the Court finds that the ALJ did not err in its rejection of Pickett's symptom testimony.[2]

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** affirming the December 27, 2021, decision of the ALJ (R. at 1807-35).

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment consistent with this Order and close this case.

Dated this 19th day of July, 2023.

Michael T. Liburdi
United States District Judge

---

[2] Although Plaintiff cites other errors in the ALJ's analysis, even if the ALJ provided some erroneous reasons for rejecting Plaintiff's testimony, such errors would be harmless because the ALJ provided other, valid reasons. *See Tommasetti*, 533 F.3d at 1038 ("[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination.") (internal quotation marks omitted).